# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOWELL A. BAISDEN,<br><br>    Plaintiff,<br><br>    v.<br><br>PATTI BOWERS, et al.,<br><br>    Defendants. | Case No.  1:16-cv-01651-AWI-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSING ACTION AS BARRED BY STATUTE OF LIMITATIONS<br><br>(ECF No. 1)<br><br>OBJECTIONS DUE WITHIN THIRTY DAYS |

Currently before the Court is Plaintiff Lowell A. Baisden complaint filed on November 2, 2016.  (ECF No. 1.)

**I.**

**SCREENING REQUIREMENT**

Pursuant to 28 U.S.C. § 1915(e)(2), the Court must dismiss a case if at any time the Court determines that the complaint fails to state a claim upon which relief may be granted.  In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a).  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S.

662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.' " Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. Iqbal, 556 U.S. at 678.

## II.

## COMPLAINT ALLEGATIONS

Plaintiff Lowell A. Baisden brings this action against Patti Bowers, the California Board of Accountancy ("CBA"), Evan J. Geilenkirchen, and Jane M. Geilenkirchen ("the Geilenkirchen defendants") seeking monetary damages for state law claims of negligence, gross negligence, defamation per se, negligent infliction of prospective economic relations, abuse of process, and negligent infliction of emotional distress for the revocation of his Certified Public Accountant ("CPA") license.[1]

Plaintiff received his CPA license on December 1, 1978 and practiced in Bakersfield, California from 1978 through January 6, 2008. (Compl. p. 5.[2]) Plaintiff netted income from his practice of almost $232,000 in 2003. (Compl. p. 5.) On or about February 14, 2003, the Internal Revenue Service ("IRS") started a formal examination of one of Plaintiff's clients, who was also his brother-in-law. (Compl. p. 5.) About September 30, 2004, the IRS initiated an investigation of Plaintiff for promoting an abusive tax avoidance transaction. (Compl. p. 5.) About July 13, 2005, Plaintiff was named the subject of a criminal investigation by the IRS in regards to the tax returns of his brother-in-law. (Compl. p. 6.) These ongoing investigations caused Plaintiff to lose many clients. (Compl. p. 6.)

---

[1] Plaintiff's complaint raises many of the same claims based upon the same facts as the complaint previously dismissed by this Court in Baisden v. Bowers, No. 1:16-cv-00641-LJO-SAB.

[2] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

2

1    During April 2006, the Geilenkirchen defendants contacted the CBA and filed a
2 complaint against Plaintiff's CPA license about a 2002 income tax return Plaintiff had prepared
3 regarding the sophisticated tax structure of a loan-out corporation. (Compl. p. 6.) CBA
4 investigator Diane Coffman was assigned to investigate the Geilenkirchen's complaint. (Compl.
5 p. 6.) Ms. Coffman worked from 1998 to 2006 for the State Controller's Office performing
6 quality control reviews of school district audits. (Compl. p. 7.) During March 2006, Ms.
7 Coffman started working for the CBA. (Compl. p. 7.)

8    About June 6, 2006, Plaintiff and his brother-in-law filed a complaint in Nebraska against
9 four individuals who later were named as witnesses in the criminal case against Plaintiff and his
10 brother-in-law. (Compl. p. 7.) About September 29, 2016, the Government filed a civil case
11 against Plaintiff under IRC Section 6700. (Comp. p. 7-8.)

12    On February 7, 2007, CBA filed an accusation against Plaintiff based on the
13 Geilenkirchen defendants' complaint. (Compl. p. 8.) During hearings on March 2 and 6, 2007,
14 the Government "failed to make a ban against [Plaintiff] from preparing tax returns for others or
15 from representing others before the IRS" in the civil action. (Compl. p. 8.) During hearings on
16 the CBA complaint, Ms. Coffman admitted that she had never prepared a tax return for a stranger
17 and was not a tax expert. (Compl. p. 9.)

18    In October 2007, the Government referred the criminal case to the Nebraska District to
19 obtain a conviction against Plaintiff. (Compl. p. 9.) About January 4, 2008, the CBA issued an
20 order revoking Plaintiff's CPA license effective January 7, 2008. (Compl. p. 9.) Shortly after
21 his license was revoked, the CBA posted the cause for the discipline against Plaintiff on their
22 website. (Compl. p. 9.) The notice stated:

> For tax year 2002, Mr. Baisden provided the clients, Mr. and Mrs. G, with false tax advice, created a sham corporation, and prepared fraudulent tax returns.
>
> As a result of Mr. Baisden's actions, Mr. and Mrs. G's 2002 tax returns were subject to an Internal Revenue Service (IRS) audit. Mr. Baisden failed to cooperate with the IRS in representing Mr. and Mr. G in the audit. Mr. and Mrs. G suffered significant financial harm in attorney fees for defending themselves in the IRS audit.
>
> Mr. Baisden failed to prepare and file Mr. and Mrs. G's 2003 and 2004 tax returns. Mr. Baisden's actions caused Mr. and Mrs. G financial harm. In addition

3

to the monthly fees they had already paid Mr. Baisden for this service, Mr. and Mrs. G were forced to pay another CPA to complete their returns.

(Compl. p. 10.)

During 2008, Mr. Baisden lost his ability to maintain his client base of income and the value of his client base due to the revocation of his CPA license by the CBA. (Compl. p. 10.) About March 8, 2008, AUSA Steven Russell asked Plaintiff to testify against his sister and brother-in-law in exchange for not being indicted with them. (Compl. p. 11.) Plaintiff informed AUSA Russell that he was not aware of any fraud or wrongdoing by his sister or brother-in-law. (Compl. p. 11.)

About June 2, 2008, Plaintiff prevailed on a summary judgment motion against the parties in the Nebraska case. (Compl. p. 11.) A bench trial was set in the case. (Compl. p. 11.) About August 14, 2008, AUSA Russell advised Plaintiff through his attorney to leave the witnesses in the criminal action alone and to stay the Nebraska case and if Plaintiff did not do so he could be arrested and incarcerated until the criminal case was completed. (Compl. p. 12.)

About March 20, 2009, criminal indictments were returned against Plaintiff for aiding and abetting tax evasion by his brother-in-law. (Compl. p. 12.) During July 2009, Plaintiff received discovery in the criminal case and CBA's Enforcement Division Chief, the Geilenkirchens, and the Nebraska parties were all listed as witnesses against Plaintiff. (Compl. at 12.) On October 3, 2011, Plaintiff pled guilty to aiding and abetting tax evasion. (Compl. at p. 13.) Plaintiff was sentenced on January 26, 2012 to 37 months of incarceration and 36 months of supervised release. (Compl. at p. 13.)

In the civil case brought by the Government, the district court failed to impose a broad lifetime ban on Plaintiff for preparing tax returns.[3] (Compl. p. 14.) On October 31, 2014,

---

[3] A court may take judicial notice "of court filings and other matters of public record." Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001). The Court takes judicial notice of United States v. Baisden, No. 1:06-cv-01368-AWI-MJS (E.D. Cal.), in which a permanent injunction was entered permanently enjoining Plaintiff from directly or indirectly, advising, promoting facilitating, or participating in:

> 1. The Plan. as defined in the Findings and Recommendations, from (a) making representations about federal tax benefits or a tax treatment which Defendant knows or has reason to know are materially false and fraudulent and based thereon; (b) organizing, promoting, and participating in a scheme by which individual personal service providers assign or invest income with wholly

1 Plaintiff was released from prison into the custody of a halfway house. (Compl. p. 14.) During
2 the first week of December 2014, Plaintiff's probation officer informed him that he could not
3 pursue any new causes of actions where he is the plaintiff or organize a corporation. (Compl. p.
4 15.)

On November 2, 2015, the Geilenkirchen defendants sent a discovery response which included documents allegedly showing that they were negligent in their complaint against Plaintiff. (Compl. p. 15.) The discovery response stated that the Geilenkirchens told Plaintiff that since they had been charged with civil fraud they could not allow him to do their 2003 and 2004 taxes. (Compl. p. 15.)

About January 25, 2016, Plaintiff served the CBA Executive Officer with a cause of action to vacate the revocation of his CPA license. (Compl. p. 17.) On June 16, 2016, Plaintiff was released from probation. (Compl. p. 17.)

**III.**

**DISCUSSION**

The Court takes judicial notice of Baisden v. Bowers, No. 1:16-cv-00641-LJO-SAB (E.D. Cal.), an action which Plaintiff has previously filed based upon the same facts raised in the instant complaint which was dismissed on May 25, 2016, as barred by the statute of limitations.

---

owned corporations; (c) claiming on a corporations' tax returns unlawful deductions for nondeductible personal expenses; (d) reporting income to individual personal service providers as rental or royalty income; (e) not reporting a corporation's payments of the service providers' personal expenses as constructive dividends for which taxes are due; and (f) not reporting self-employment or social security tax liability on personal service income that has been misclassified as rental or royalty income;
2. Any other investment, business venture, other plan, or arrangement making false or fraudulent representations about federal tax benefits or treatment, in furtherance of the Plan;
3. Any other activity subject to penalty under I.R.C. Sections' 6700 and 6701, or any other penalty provision in the Internal Revenue Code, in furtherance of the Plan;
4. Causing other persons or entities to understate their federal tax liabilities and avoid paying federal taxes, in furtherance of the Plan;
5. Any other activity subject to penalty under I.R.C. Sections 6694 and 6695, in furtherance of the Plan;
6. Any other conduct that interferes with the administration or enforcement of the Internal Revenue Code and all internal revenue laws, in furtherance of the Plan; and
7. Any future tax method, scheme, plan, or arrangement of any kind, whatsoever, in furtherance of the Plan, without express I.R.S. approval.

(February 19, 2014 Order Adopting Findings and Recommendations, as amended November 14, 2014.)

Baisden v. Bowers, No. 1:16-cv-00641-LJO-SAB, ECF No. 4. As this Court previously addressed in the prior action, "under federal law, a claim accrues 'when the plaintiff knows or has reason to know of the injury which is the basis of the action.'" Lukovsky v. City and County of San Francisco, 535 F.3d 1044, 1048 (9th Cir. 2008) (quoting Two Rivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999)); Fink v. Shedler, 192 F.3d 911, 914 (9th Cir. 1999). Under California law a claim accrues and the statute of limitations begins to run when the wrongful act is done and the obligation or liability arises. Howard Jarvis Taxpayers Ass'n v. City of La Habra, 25 Cal.4th 809, 815 (2001), as modified (July 18, 2001). This is when the cause of action is complete in all its elements. Norgart v. Upjohn Co., 21 Cal.4th 383, 397 (1999). California's statute of limitations for the claims that Plaintiff is asserting in this action would be one or two years. Cal. Code Civ. Proc. §§ 339, 340.

Plaintiff was aware that the Geilenkirchen defendants had filed a complaint against him that resulted in the revocation of his license at the time his license was revoked in 2008. Plaintiff had the factual basis for his claims in this action at the time that his license was revoked. Norgart, 21 Cal.4th at 390. "[U]nder California law, a plaintiff 'need not be aware of the specific 'facts' necessary to establish the claim' in order for a cause of action to accrue." Soliman v. Philip Morris, Inc., 311 F.3d 966, 971 (9th Cir. 2002) (quoting Jolly v. Eli Lilly & Co., 44 Cal.3d 1103, 1111 (1988)). Nor does the plaintiff need to be aware of a particular legal theory to support the claim. Soliman, 311 F.3d at 971. A plaintiff's claim accrues when he at least suspects that someone has done some wrong to him. Id. (quoting Jolly, 44 Cal.3d at 1103). Once a plaintiff is aware that he has been injured the statute of limitations begins to run. Soliman, 311 F.3d at 972. At this time, he cannot sit and wait for the facts to find him, but must go find them for himself if he can and file suit. Norgart, 21 Cal.4th at 398.

According to Plaintiff's complaint, the revocation of his license was effective on January 8, 2008. (Compl. at p. 10.) At this time, the claims asserted in this action would have accrued and the statute of limitations would begin to run. Therefore, all the claims raised in this action would have to be brought before January 8, 2010. Plaintiff did not file this action until November 2, 2016, more than six years after the statute of limitations had run on the claims

6

brought herein.

Accordingly, the Court finds that this action is barred by the statute of limitations and recommends the action be dismissed without leave to amend.

## IV.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that this action be dismissed without leave to amend as barred by the statute of limitations.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within thirty (30) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **November 7, 2016**

UNITED STATES MAGISTRATE JUDGE